UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

TAQUARIUS KAREAM FORD,

    Defendant.

3:14 -cr-00045-HZ

OPINION & ORDER

Billy Williams
United States Attorney
Steven Mygrant
Leah Bolstad
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204

    Attorneys for United States of America

//

//

1 – OPINION & ORDER

Laurie Bender
Laurie Bender, PC
735 SW First Avenue, 2nd Floor
Portland, OR 97204

Bryan Boender
Boender & Kerns
1188 Olive Street
Eugene, Oregon 97401

>	Attorneys for Defendant

HERNÁNDEZ, District Judge:

The parties have raised an issue of first impression before the Court regarding forfeiture. Specifically, the parties dispute whether an *in personam* money judgment is available to the Government in light of the Supreme Court's recent decision in *Honeycutt v. United States*, 581 U.S. ___, 137 S. Ct. 1626 (2017). The Government moves the Court to enter preliminary and final orders of forfeiture including an *in personam* money judgment against Defendant which encompasses both proceeds from Defendant's crimes and property used to facilitate those crimes. *See* Gov't Mot. 6, ECF 300. Defendant and Federal Public Defenders ("FPD") as amicus curiae object, arguing in relevant part, that *Honeycutt* foreclosed on imposing such a money judgment and limits forfeiture to only the actual property that Defendant acquired. In other words, Defendant argues that forfeiture can only be ordered against the actual tainted assets themselves as opposed to an *in personam* money judgment against Defendant himself that could be used to collect Defendant's future untainted assets. After reviewing the parties' briefs, the record in this case, and the relevant law, the Court concludes that *Honeycutt* does not prohibit the Government from seeking an *in personam* money judgment against Defendant. Accordingly, the Government's motion is granted in part.

//

## BACKGROUND

After an eleven-day trial, a jury found Defendant guilty of one count of sex trafficking conspiracy, two counts of sex trafficking, and one count of obstruction. *See* Verdict Form, ECF 281. The Second Superseding Indictment also included criminal forfeiture allegations stating that Defendant shall forfeit under 18 U.S.C. § 1594 "any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violations, and any property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of such violations." Second Superseding Indictment 3, ECF 104. The Government submitted an Amended Bill of particulars identifying twenty-six assets as subject to criminal forfeiture. *See* Am. Bill of Particulars, ECF 265. In addition to Defendant's specific forfeitable assets, the Government also indicated that it would separately seek a money judgment against Defendant. *See* Gov't Mem. Regarding Applicable P. for Forfeiture 5, ECF 268.

After trial, Defendant waived his right to a jury determination as to forfeiture. *See* Stip. & Waiver of Jury Trial Regarding Forfeiture, ECF 285. On September 1, 2017, the Government filed its forfeiture motion, seeking: (1) an *in personam* money judgment of $600,000, "representing a portion of the proceeds obtained by [D]efendant as a result of his criminal activity and property used or intended to be used to commit or facilitate sex trafficking;" (2) specific facilitating property; and (3) substitute assets based on the unavailability of directly forfeitable property. Gov't Mot. 31. Defendant opposes an *in personam* money judgment arguing that it is no longer available under *Honeycutt*. *See* Def's Resp., ECF 305. The Government addressed Defendant's opposition in its reply brief. *See* Gov't Reply, 313. The FPD filed an amicus brief in support of Defendant's position. *See* FPD Amicus Br., ECF 316.

//

**STANDARDS**

If applicable, forfeiture is mandatory and imposed as punishment for a crime. *See United States v. Monsanto*, 491 U.S. 600, 606–07 (1989) (holding that, by using the phrase "shall order" in a criminal forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied"); *United States v. Davis*, 706 F.3d 1081, 1083 (9th Cir. 2013) (recognizing that "[f]orfeiture is imposed as punishment for a crime"). "When the government has met the requirements for criminal forfeiture, the district court must impose criminal forfeiture, subject only to statutory and constitutional limits." *United States v. Newman*, 659 F.3d 1235, 1240 (9th Cir. 2011) (citing *United States v. Casey*, 444 F.3d 1071, 1076 (9th Cir. 2006)). The government carries the burden of establishing facts warranting forfeiture by a preponderance of the evidence. *United States v. Christensen*, 828 F.3d 763, 822 (9th Cir. 2015). The government may seek criminal forfeiture in the form of: (1) an *in personam* money judgment against the defendant; (2) forfeiture of specific assets; and (3) forfeiture of substitute assets. *Newman*, at 1242–43 (citing Fed. R. Crim. P. 32.2). Courts have unanimously agreed that *in personam* money judgments are proper even where forfeiture statutes do not refer to money judgments. *Id.* at 1242 (citing *United States v. McGinty*, 610 F.3d 1242, 1246 (10th Cir. 2010) (collecting cases)).

**DISCUSSION**

Defendant claims that in *Honeycutt*, the Supreme Court restricted forfeiture to only what is within the plain text of forfeiture statutes. The Supreme Court determined that under 21 U.S.C. § 853, a co-conspirator could not be held liable for tainted proceeds that he did not personally obtain. *Honeycutt*, 137 S. Ct. at 1634–35. Here, the Government argues that *Honeycutt* is factually distinguishable and inapplicable because it turned on an issue of joint and several

liability not present in this case. While the Supreme Court did not squarely address whether an *in personam* money judgment under 18 U.S.C. § 1594(d) remains permissible, Defendant argues that *Honeycutt*'s holding applies with equal force here and effectively overruled the Ninth Circuit's prior precedent to the contrary.

**I.      Forfeiture Statutes**

The Government invokes 18 U.S.C. § 1594(d), the specific criminal forfeiture statute applicable to Defendant's crimes of conviction, as the basis for an *in personam* money judgment against Defendant. The statute provides:

> (d) The court, in imposing sentence on any person convicted of a violation of this chapter, shall order, in addition to any other sentence imposed and irrespective of any provision of State law, that such person shall forfeit to the United States—
>
> (1) such person's interest in any property, real or personal, that was involved in, used, or intended to be used to commit or to facilitate the commission of such violation, and any property traceable to such property; and
>
> (2) *any property, real or personal, constituting or derived from, any proceeds that such person obtained, directly or indirectly, as a result of such violation, or any property traceable to such property*.

18 U.S.C. § 1594(d) (emphasis added). The general criminal forfeiture statute at issue in *Honeycutt*, 21 U.S.C. § 853, contains similar provisions:

> (a) Property subject to criminal forfeiture
>
> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
>
> (1) *any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation*;

> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . . .

21 U.S.C. § 853 (emphasis added). Section § 853(o) states that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes." In addition, § 853 mandates forfeiture of substitute property under five circumstances:

> (1) In general
>
> Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant—
>
> (A) cannot be located upon the exercise of due diligence;
>
> (B) has been transferred or sold to, or deposited with, a third party;
>
> (C) has been placed beyond the jurisdiction of the court;
>
> (D) has been substantially diminished in value; or
>
> (E) has been commingled with other property which cannot be divided without difficulty.
>
> (2) Substitute property
>
> In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

21 U.S.C. § 853(p).

## II. The *Honeycutt* Decision

In *Honeycutt*, the Supreme Court considered "whether, under § 853, a defendant may be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." 137 S. Ct. at 1630. The Court held that such liability was "inconsistent with the statute's text and structure." *Id. Honeycutt* involved the defendant

Terry Honeycutt and his brother Tony Honeycutt, who were selling iodine-based water-purification products out of Tony's hardware store that could be used in the manufacture of methamphetamine. *Id.* After observing "edgy looking folks" purchasing the iodine products, Terry asked the police if the iodine crystals could be used to make meth. *Id.* An officer confirmed that they could and advised Terry to cease selling the products if the sales made him uncomfortable. *Id.* The brothers sold large quantities of the iodine filters despite knowing that there was no legitimate use that most consumers would have for consuming such large quantities. *Id.* Tony's store grossed approximately $400,000 over a three-year period from sale of the water-purification products. *Id.*

A DEA investigation led to an indictment of the brothers. Pursuant to 21 U.S.C. § 853(a)(1), which provides for the forfeiture of any proceeds obtained as the result of the charged crime, the government sought forfeiture money judgments against both brothers totaling the store's profits from sales of the filters. Tony pleaded guilty and agreed to forfeit $200,000. *Id.* Terry went to trial and was found guilty of conspiracy to distribute the iodine. The trial court declined to impose a money judgment against Terry and found that he had no controlling interest in the store and did not actually benefit from the sale of the filters. The Sixth Circuit reversed, concluding that, as co-conspirators, the brothers were jointly and severally liable for the proceeds of the conspiracy.

The Supreme Court reversed the Sixth Circuit, holding that § 853(a) limits forfeiture to the tainted property and does not reference joint and several liability, which would require forfeiture of untainted property. *Id.* at 1632. Importantly, the Court construed the use of the term "obtained" to support its conclusion that § 853(a) "defines forfeitable property solely in terms of personal possession or use." *Id.* In other words, the use of the term "obtain" requires that the

defendant actually obtain the forfeitable property. *Id.* Furthermore, the Court found that reading joint and several liability into the statute would nullify another provision of the statute, § 853(p), which delineates five conditions under which untainted substitute property shall be forfeited. *Id.* at 1634 (citing 21 U.S.C. § 853(p)).

Ultimately, the Supreme Court looked at the plain text of § 853 to conclude that Congress intended only § 853(p) to deal with untainted assets and the statute did not contemplate otherwise imposing joint and several liability. In reaching this conclusion, the Court spoke broadly about how the general criminal forfeiture statute should be construed:

> Traditionally, forfeiture was an action against the tainted property itself and thus proceeded *in rem*; that is, proceedings in which "[t]he thing [was] primarily considered as the offender, or rather the offence [was] attached primarily to the thing." The forfeiture "proceeding *in rem* st[ood] independent of, and wholly unaffected by any criminal proceeding *in personam*" against the defendant. Congress altered this distinction in enacting § 853 by effectively merging the in rem forfeiture proceeding with the *in personam* criminal proceeding and by expanding forfeiture to include not just the "thing" but "property . . . derived from . . . any proceeds" of the crime. § 853(a)(1). But as is clear from its text and structure, § 853 maintains traditional *in rem* forfeiture's focus on tainted property unless one of the preconditions of § 853(p) exists. For those who find it relevant, the legislative history confirms as much: Congress altered the traditional system in order to "improv[e] the procedures applicable in forfeiture cases." S.Rep. No. 98–225, p. 192 (1983). By adopting an *in personam* aspect to criminal forfeiture, and providing for substitute-asset forfeiture, Congress made it easier for the Government to hold the defendant who acquired the tainted property responsible. Congress did not, however, enact any "significant expansion of the scope of property subject to forfeiture."
>
> Forfeiture pursuant to § 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime.

*Id.* at 1634–35 (internal citations omitted).

//

### III. Applicability of *Honeycutt*

It is well-established in this jurisdiction that courts are required to impose money judgments on criminal defendants under certain circumstances. In *Casey*, the Ninth Circuit explained that notwithstanding § 853(p), courts are required to impose *in personam* money judgments against criminal defendants to ensure that they do not profit from their criminal activity:

> Requiring imposition of a money judgment on a defendant who currently possesses no assets furthers the remedial purposes of the forfeiture statute by ensuring that all eligible criminal defendants receive the mandatory forfeiture sanction Congress intended and disgorge their ill-gotten gains, even those already spent.

444 F.3d at 1074. The *Casey* Court elaborated that the punitive nature of forfeiture is fulfilled by permitting the seizure of future assets. *Id.* (citing *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006)). Defendant and FPD argue that *Casey* and its progeny cannot survive *Honeycutt*. According to Defendant, § 853(p) is the *only* way for the Government to obtain Defendant's untainted assets. Defendant interprets *Honeycutt* as standing for the proposition that forfeiture can only be sought against the tainted property itself or substitute property under § 853(p); by contrast, an *in personam* money judgment against a criminal defendant that could reach future untainted assets is not within the plain text of forfeiture statutes and is therefore prohibited.

The Court disagrees and finds that *Honeycutt*'s holding is not as broad as Defendant claims and is inapplicable to the instant case. *Honeycutt* is factually and legally distinguishable from the forfeiture matter currently before the Court. The issue before the Supreme Court was whether § 853 supported the imposition of joint and several liability for forfeiture purposes. The Supreme Court considered whether the defendant could be held financially accountable for proceeds from the charged criminal sales that his brother obtained. In that case, however, the

proceeds from those sales never passed through the defendant's hands. "The District Court declined to enter a forfeiture judgment, reasoning that [the defendant] was a salaried employee who had not personally received any profits from the iodine sales." *Honeycutt*, 137 S. Ct. at 1631. The Supreme Court held that Terry could only be required to forfeit property that "the defendant himself actually acquired as the result of his crime." *Id.* at 1635. Accordingly, because the defendant did not personally receive any proceeds from his crime, the Supreme Court held a money judgment against him for those proceeds was improper. *Id.*

Here, by contrast, the Court finds that Defendant has personally obtained proceeds as a result of his crimes. The Court is convinced that the Government has established by a preponderance of the evidence that Defendant obtained proceeds from his crimes of conviction. *See* Gov't Mot. 8–27 (reciting testimony from trial demonstrating that Defendant obtained proceeds from his crimes). The Government estimates, based on the evidence adduced at trial, that Defendant obtained at least $312,700 in proceeds.[1] *See* Gov't Mot. 26–27. The Government was only able to locate $3,445 in proceeds seized from Defendant in his 2012 arrest and $6,360.81 seized from Defendant in 2014 to be used as a substitute asset. *Id.* at 28–30.

Defendant urges the Court to read *Honeycutt* to mean that the Government can only seek forfeiture of the *res*, i.e. the actual physical money that Defendant obtained, as opposed to seeking an *in personam* money judgment against Defendant for the amount of tainted proceeds. Under Defendant's reading of *Honeycutt*, criminal defendants could benefit from their ill-gotten gains by simply spending their proceeds or otherwise putting them beyond the government's reach. The Supreme Court's holding in *Honeycutt* does not require such a result. *Honeycutt* does

---

[1] "Based on the evidence adduced at trial, the Government estimates the amount of funds used to facilitate sex-trafficking offenses to be at least $600,000, and after reducing this figure by the amount of proceeds to avoid double counting, the government is therefore seeking facilitating property money judgment of **$287,300** ($600,000 minus $312,700." Gov't Mot. 17.

not espouse a broad rule categorically barring *in personam* money judgments; rather, it prohibited the Government from imposing an *in personam* money judgment against a co-conspirator who never received or possessed profits from his crimes. In other words, *Honeycutt* does not require that Defendant still be in possession of his ill-gotten proceeds, it merely limits forfeiture to proceeds that he obtained at some point from his crimes. Had the defendant in *Honeycutt* obtained money from the illegal sales, then the government could have sought a money judgment against him for that amount. In this case, Defendant obtained proceeds from his sex-trafficking crimes and it is proper for the Government to seek a money judgment against him for those proceeds.

In sum, *Honeycutt* did not overrule the universally recognized rule among the federal courts of appeals permitting *in personam* money judgments against criminal defendants.

Moreover, cases decided since *Honeycutt* show that its holding was intended to resolve issues of joint and several liability. For example, in *United States v. Brown*, the Third Circuit concluded that *Honeycutt* applied with equal force to another forfeiture statute, 21 U.S.C. § 982(a)(2). No. 15-1505, 694 Fed. Appx. 57, 57–58 (3d Cir. Aug. 9, 2017); *see* also *United States v. Gjeli*, 867 F.3d 418, 426 (3d Cir. 2017) (same). The Third Circuit reversed the trial court's imposition of joint and several liability for a forfeiture money judgment. *Brown*, 694 Fed. Appx. at 57–58. This decision was based on the similarities between § 982(a)(2) and § 853 limiting forfeiture to property "constituting" or "derived from" proceeds obtained "directly or indirectly" from a crime. The Third Circuit also found that the statute's use of the term "obtained" showed that forfeiture was limited in terms of personal possession or use. *Id.* Likewise, in *Gjeli* the Third Circuit reversed the district court's imposition of joint and several

liability for forfeiture. 867 F.3d at 427. The *Gjeli* Court remanded for the district court to determine the amount of forfeiture attributable to each criminal defendant. *Id.*

In further example, the Tenth Circuit reversed a forfeiture judgment where the district court had not addressed the amount of tainted proceeds that the defendant had "obtained." *United States v. Pickel*, 863 F.3d 1240, 1260–61 (10th Cir. 2017). The court in *Pickel* determined that under *Honeycutt*, "when a defendant did not 'obtain' tainted property as a result of the crime, § 853(a) does not authorize forfeiture from that defendant." *Id.* (citing *Honeycutt*, 137 S. Ct. at 1635). The Tenth Circuit's focus was on whether the defendant had obtained tainted proceeds as the trigger for a money judgment, not whether the defendant retained possession of those proceeds. *Id.*; *see also United States v. Ward*, No. 2:16-cr-6, 2017 WL 4051753, at *4 (W.D. Mich. Aug. 24, 2017), *report and recommendation adopted*, No. 2:16-cr-06-01, 2017 WL 3981160 (W.D. Mich. Sept. 11, 2017) (permitting a money judgment against the defendant in the sum of the tainted proceeds, $475,254.30, even though the government had only been able to locate the defendant's assets totaling approximately $10,694.36); *United States v. Lobo*, No. 15 CR. 174 (LGS), 2017 WL 2838187, at *7 (S.D.N.Y. June 30, 2017) (concluding that, in light of *Honeycutt*, the defendant was liable for the tainted proceeds obtained directly or indirectly from his drug importation conspiracy).

Similarly, in *United States v. Carlyle*, the Eleventh Circuit applied *Honeycutt* to another forfeiture statute. No. 15-12977, 2017 WL 4679564 (11th Cir. Oct. 18, 2017). In that case, the government conceded that the defendant co-conspirator could not be jointly and severally liable for the entire amount of proceeds from a wire-fraud scheme. *Id.* at *3. The government asked for a remand to determine "the amount of proceeds directly obtained by Defendant." *Id.* The Eleventh Circuit remanded the case to the district court to "determine the appropriate amount of

monetary forfeiture to be imposed on Defendant." *Id.* at *3. The Court finds this remand order instructive in that it focuses on the amount of proceeds attributable to the defendant rather than concluding that money judgments are unavailable under *Honeycutt*.

These decisions are contrary to Defendant's contention that forfeiture is limited only to the obtained proceeds themselves as opposed to a money judgment against the individual who obtained the tainted proceeds. Cases considering *Honeycutt* have all involved co-conspirator liability. Some of those courts have denied or reversed money judgments where it was not shown that the co-conspirator actually obtained the proceeds of the criminal conspiracy. Consistent with those opinions, other courts have permitted money judgments where such a showing was made. None of the cases that the Court reviewed, however, concluded that it was improper to impose an *in personam* money judgment against a criminal defendant where it was shown that the defendant obtained proceeds from his crimes. Accordingly, the Court concludes that *Honeycutt* requires that a criminal defendant must have "obtained" the forfeitable proceeds in order to be liable for the amount of those proceeds. Forfeiture is not limited to the physical proceeds themselves, which in most cases will be unobtainable.

## IV. Defendant's Constitutional Arguments

Defendant also claims that his waiver of a jury determination on forfeiture was premised on the Government seeking forfeiture of specific assets. Had Defendant known that the Government would be seeking an *in personam* money judgment, Defendant argues that he would not have stipulated to a waiver of his right to a jury. Further, Defendant argues that the Government failed to provide constitutionally adequate notice that it would seek a personal money judgment. The Court finds that these arguments are without merit. A review of Defendant's waiver shows that it was not conditional on the Government limiting its forfeiture

requests. *See* Stip. & Waiver of Jury Trial Regarding Forfeiture. Prior to filing that waiver, the Government had stated in its briefing that it would be "separately seeking a money judgment against [Defendant]" in addition to the other specific forfeitable assets. *See* Gov't Mem. Regarding Applicable P. for Forfeiture 5. In its Motion, the Government argued that under Ninth Circuit precedent and Rule 32.2, a jury was not needed to determine forfeiture of a personal money judgment and the Court must determine the amount of money that Defendant will be ordered to pay. *See Christensen*, 828 F.3d at 821–21 (citing Rule 32.2 to hold that a jury is not required to determine *in personam* money judgment forfeiture); Fed. R. Crim. P. 32.2(b)(1)(A) ("If the government seeks a personal money judgment, the court must determine the amount of money that defendant will be ordered to pay."). Accordingly, the Court concludes that the Government provided constitutionally adequate notice of its intent to seek an *in personam* money judgment against Defendant and Defendant has waived his right to a jury determination on this issue.[2]

## V. Money Judgment Amount

Once more, the Government seeks forfeiture in the amount of $600,000, which encompasses both proceeds and facilitating property of Defendant's crimes of conviction. The Government bears the burden of establishing forfeitability by a preponderance of the evidence. Furthermore, because forfeiture proceedings are part of sentencing, the Federal Rules of Evidence do not apply. *United States v. Sustaita*, 1 F.3d 950, 952 (9th Cir. 1993) (quoting *United States v. Notrangelo*, 909 F.2d 363, 365–66 (9th Cir. 1990) ("The procedural safeguards and evidentiary limitations afforded defendants in criminal trials are not required at sentencing.").

---

[2] The Court also rejects Defendant's argument that a personal money judgment constitutes an excessive fine in violation of the Eighth Amendment. As discussed above, personal money judgments are proper where the dollar amount of tainted property exceeds the defendant's assets. The Ninth Circuit in *Newman* recognized that "although Defendants must pay both restitution and criminal forfeiture, the result is not an impermissible 'double recovery.'" 659 F.3d at 1241 (citing *McGinty*, 610 F.3d at 1247–48).

14 – OPINION & ORDER

The district court has the discretion to admit a broad range of evidence including hearsay when determining forfeitability. *United States v. Alonso*, 48 F.3d 1536, 1545–46 (9th Cir. 1995) (noting that under U.S.S.G. § 6A1.3 courts may consider "relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to supports its probable accuracy").

The calculation of forfeiture amount does not demand mathematical exactitude and the district courts are "permitted to use general points of reference as a starting point . . . and may make reasonable extrapolations from the evidence established by a preponderance of the evidence at the sentencing proceeding." *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011).

The Court finds that the Government has proven by a preponderance of the evidence that an *in personam* money judgment against Defendant in the amount of $600,000 is warranted. The Court's calculation includes proceeds and facilitating property of Counts 1, 2, and 3 of the Second Superseding Indictment. The money judgment amount is supported by the jury's guilty verdict, the evidence presented at trial, as well as the evidence submitted by the Government at the forfeiture hearing.

With respect to proceeds, the Government has proven by a preponderance of the evidence that Defendant directly or indirectly obtained $222,700 in proceeds from sex trafficking victims A.F.W., T.H., A.C.W., C.H., and D.J. Regarding A.F.W., the Government extrapolated from her testimony that she made "$30K in 30 days" for Defendant, that she made $300,000 over the course of 300 days in a year. Gov't Mot. 10–11. The Court finds that the evidence adduced at trial shows that A.F.W., more likely than not, earned a lesser amount for Defendant, approximately $210,000 ($700 a day for 300 days). The Court further finds that the remainder of

the Government's calculations as to T.H., A.C.W, C.H., and D.J. are supported by a preponderance of the evidence and are accurate.

Regarding facilitating property, the Court finds that the Government has proven by a preponderance of the evidence that Defendant used or intended to use $600,000 to commit or facilitate the commission of the sex trafficking conspiracy. The Government reduces that figure "by the amount of proceeds to avoid double counting," and seeks a "facilitating property money judgment of $287,300 ($600,000 minus $312,700)." Gov't Mot. 17. The Court adjusts the facilitating property figure to $377,300 to reflect the Court's reduced proceeds calculation above ($600,000 minus $222,700). Property used to facilitate Defendant's crimes of conviction includes: rent paid on Defendant's "employee condo" and Victory P.R. offices; hotel and motel rent and costs; money that Defendant received from Konia Prinster that he used to facilitate the sex trafficking conspiracy; and money Defendant used to recruit and retain sex trafficking victims. The evidence adduced at trial as well as the evidence presented at the forfeiture hearing prove that it was more likely than not that Defendant used or intended to use the property identified above to facilitate the sex trafficking conspiracy.

In sum, the Court finds that the government has demonstrated that an *in personam* money judgment against Defendant in the amount of $600,000 is supported by a preponderance of the evidence ($222,700 in proceeds from sex trafficking victims and $377,300 in facilitating property).

## CONCLUSION

The Government's motion for an *in personam* money judgment against Defendant is GRANTED in part. The Court finds that an *in personam* money judgment against Defendant in the sum of $600,000 is warranted. A preliminary order of forfeiture pursuant to Federal Rule of

Criminal Procedure 32.2 will be issued separately. In the preliminary order of forfeiture, the dollar amount of any substitute property subject to forfeiture will be subtracted from the amount of the *in personam* money judgment.

DATED this 3 day of November, 2017.

/s/ Marco Hernández
MARCO A. HERNÁNDEZ
United States District Court Judge